IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

EMERSON TRON WESTLAKE                                                                                  PLAINTIFF

v.                          Civil No. 3:24-cv-03024-TLB-MEF

EUREKA SPRINGS POLICE DEPARTMENT,
Government Entity;
TIM HOLM, Officer,
Eureka Springs Police Department;
DOES, Officers,
Eureka Springs Police Department                                                                      DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Emerson T. Westlake ("Westlake"), currently an inmate of the Conway County Detention Center, has filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis* ("IFP").

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court must screen any complaint in which a prisoner seeks to proceed IFP. 28 U.S.C. § 1915A(a). The Court must determine whether the Complaint should be served on the Defendants.

### I.       BACKGROUND

According to the allegations of the Amended Complaint, on February 20, 2020, three Eureka Springs Police Department ("ESPD") officers used excessive force against him and

1

profiled him as being mentally unstable when serving an "unfounded" *ex parte* protective order on him. (ECF No. 10 at 1). The protected party was 12 years old, which Westlake maintains also caused the officers to be heavy handed with him. *Id.*

On July 9, 2020, Westlake says he fell and hit his head on a rock. (ECF No. 10 at 2). Although the cut on his head was small, Westlake indicates he was badly hurt and had a foul taste in his mouth that he thought was spinal fluid. *Id.* As a result, he drove himself to the Eureka Springs Hospital. *Id.* When he was given papers to fill out, Westlake says he was having difficulty and was disorientated. *Id.* When he asked a nurse for help, she told him to get out. *Id.* Westlake went to his truck and retrieved his birth certificate and medical card, but when he rang the emergency button no one would let him back in. *Id.* Two ESPD officers arrived and berated him for 10 minutes, then handcuffed him, and took him to their vehicle. *Id.* Westlake says his head was slammed down on the hood and he was shoved around. *Id.* As a result of being slammed down, Westlake indicates the wound on his head was bleeding and there was blood everywhere. *Id.* at 3.

Westlake was taken to the Carroll County Detention Center, where a female jailer gave him a breath test which showed a BAC of 0.059. (ECF No. 10 at 3). The jailer insisted that Westlake be taken to Berryville Hospital, where he received wound treatment. *Id.* The next morning Westlake was released barefoot and 25 miles from his truck which was still parked at the Eureka Springs Hospital. *Id.*

On August 4, 2020, Westlake says he was sitting in his truck "after confronting 2 gay men who were drunk cat calling at me." (ECF No. 10 at 4). Westlake states there were no threats made and no physical contact. *Id.* Despite this, Westlake says two ESPD officers took him to

Carroll County Detention Center where he refused to take a breathalyzer test.  *Id.*  Because he refused, Westlake was taken to the Berryville Hospital for a blood test.  *Id.*  However, the doctor refused to take a "forced sample" stating that Westlake "was obviously not intoxicated."  *Id.*  Westlake indicates he was released the following afternoon and had to walk 25 miles back to where he had legally parked his truck.  *Id.*  Westlake discovered the truck had been impounded.  *Id.*

The next incident occurred on August 10, 2020, when Westlake was standing next to his truck near Harps grocery store.  (ECF No. 10 at 5).  Westlake had parked to avoid a driving on a suspended license ticket.  *Id.*  He realized, however, that Defendant Holm may have seen him behind the wheel.  *Id.*  When Defendant Holm pulled up, Westlake told him that he did not need any help.  *Id.*  Defendant Holm then "spang" from his cruiser, placed Westlake in a choke hold, and took him to the ground slamming Westlake's head into the concrete.  *Id.*  Westlake was taken by ambulance to the Eureka Springs Hospital and recovered there for about an hour before he was released.  *Id.*

## II.     LEGAL STANDARD

Under the PLRA, the Court is obliged to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In evaluating whether a *pro se* plaintiff

has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Mere conclusory allegations with no supporting factual averments are insufficient to state a claim upon which relief can be based. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

### III. DISCUSSION

Westlake filed this civil rights action on May 7, 2024. His four claims arose between February and August of 2020. Section 1983 does not contain its own statute of limitation. Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations." *Wilson v. Garcia*, 471 U.S. 261, 268 (1985). In Arkansas, this is the three-year personal injury statute of limitations, codified in Ark. Code Ann. § 16-56-105(3). *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001) (Ark. Code Ann. § 16-56-105(3) is the statute of limitations applicable to § 1983 cases). Westlake's claims are barred by the statute of limitations as he did not commence this action until after the limitations period had expired.

### IV. CONCLUSION

For these reasons, it is recommended that:

(1) the case be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted on the ground that the claims are barred by the statute of limitations.

(2)  the Plaintiff is warned that, in the future, this dismissal may be counted as a strike for purposes of 28 U.S.C. § 1915(g) and thus, the **Clerk** is directed to place a § 1915(g) strike flag on the case for future judicial consideration; and

(3)  the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this dismissal would not be taken in good faith.

**Status of Referral: The referral terminates upon the filing of this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of July 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE